UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**OZGUR ALCAN,**

      **Plaintiff,**

  v.

**SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,**

      **Defendants.**

Case No. 1:25-cv-961

JUDGE DOUGLAS R. COLE
Magistrate Judge Vascura

## OPINION AND ORDER

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Ozgur Alcan pending removal proceedings. Alcan filed a Petition for Writ of Habeas Corpus (Doc. 1), requesting this Court to order his release. ICE has since responded. (Doc. 9). And one of the other Respondents, Warden of Butler County Jail, also has filed a Motion to Dismiss (Doc. 6), arguing it is not a proper Respondent. For the reasons explained below, the Court **DISMISSES WITHOUT PREJUDICE** Alcan's Petition (Doc. 1) and **DENIES AS MOOT** Respondent's Motion to Dismiss (Doc. 6).

## BACKGROUND

The background of this case is not the clearest. The Court does its best to piece together the story between the Petition, the Return of Writ, and the government's exhibits. To start, Petitioner is a citizen of Turkey. (Doc. 1, #2; Not. to Appear, Doc. 9-1, #67; Form I-213, Doc. 9-2, #70, 72). He arrived in the United States on April 7, 2022, near San Luis, Arizona. (Doc. 1, #4; Doc. 9-1, #67; Doc. 9-2, #70). When Alcan

first arrived, he was not "admitted or paroled after inspection by an Immigration Officer." (Doc. 9-1, #67). Four days after his arrival, immigration officials seemingly stopped Alcan. The Court concludes that this must be the case because Alcan received a Notice to Appear (NTA) dated April 11, 2022. (*See* Doc. 9-1, #67). Oddly, the Department of Homeland Security's (DHS) "Record of Deportable/Inadmissible Alien," known as Form I-213, stated his "Length of Time Illegally in U.S." as "at entry," perhaps because it had only been a few days. (Doc. 9-2, #70). In any event, the NTA further stated that he was charged with violating § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) because he is "an alien present in the United States without being admitted or paroled." (Doc. 9-1, #67). And it ordered him to appear before an immigration judge on May 3, 2022. (*Id.*).

Alcan does not dispute, and has not disputed, that he entered the United States without inspection. He first admitted it to the immigration officers that initially stopped him. (Doc. 9-2, #72). And he again admitted as much in immigration court. (Immigration Judge Decision, Doc. 9-3, #74 (admitting factual allegations in NTA)). So on July 18, 2022, the immigration judge "sustained removability as charged and directed Turkey as the country for removal, should removal become necessary." (*Id.* at #74).

Four days later, Alcan applied for asylum and withholding of removal. (*Id.*; *see* Doc. 1, #4). In his initial conversations with immigration officers, he had claimed that he was afraid to return to Turkey. (Doc. 9-2, #72). The immigration judge heard testimony from Alcan, as well as several family members, as part of a consolidated

asylum case. (Doc. 9-3, #74). But on April 1, 2024, the immigration judge denied Alcan's application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at #97). Accordingly, the immigration judge ordered Alcan be removed to Turkey. (*Id.*; *see* Doc. 1, #2).

Several weeks later, on April 22, 2024, Alcan appealed this decision to the Board of Immigration Appeals (BIA). (Doc. 9-4, #100). There have been no hearings or briefing schedule set since then. (*Id.* at #99–100).

For the next year and a half, it appears that Alcan was not detained, although neither the Petition nor Return of Writ state whether Alcan was released on bond or otherwise. Nevertheless, Alcan states that he "has been incarcerated since November 14, 2025." (Doc. 1, #1). But he does not offer any further details about how or why his detention came to pass.

The government's Return of Writ, however, fills in at least some of the gaps. On November 17, 2025, Alcan was arraigned in Dayton Municipal Court on charges of felonious assault with a deadly weapon and criminal damage. (Case Summary, Doc. 9-6, #104–06). Several days later, on November 21, the court dismissed those charges because the "case [was] ignored by the grand jury." (*Id.* at #107 (capitalization omitted)). From there, ICE detained Alcan on November 22. (Doc. 9, #50; Not. to EOIR: Alien Address, Doc. 9-5, #103).

Alcan filed this Petition for Writ of Habeas Corpus on December 23, 2025. (Doc. 1). There, he requests the Court declare his detention violates the due process clause and the INA, and thus he seeks the Court to order Respondents to release him

3

immediately. (*Id.* at #8). The federal Respondents[1] filed their Return of Writ. (Doc. 9). Butler County Jail separately moved for dismissal though and argues it is not a proper Respondent. (Doc. 6). And Alcan replied. (Doc. 10).

With that, the petition is ripe for the Court's review.

## LAW AND ANALYSIS

There is some debate between the parties as to whether Alcan is in pre- or post-removal detention. The answer determines which statutory scheme applies. So the Court starts there. Ultimately, the Court concludes that Alcan is in pre-removal detention pending the outcome of his asylum appeal. Based on that, then, the Court finds he is properly detained under 8 U.S.C. § 1225(b)(2).

In the Petition, Alcan claims that his "detention became unconstitutional six months after the removal order in his case became administratively final." (Doc. 1, #1). Based on that, Alcan argues that, under 8 U.S.C. § 1231(a), the government can only detain him for 90 days. (*Id.* at #4–5). While the government may detain him beyond that 90-day window, if removal is not reasonably foreseeable, "continued detention is no longer authorized by statute." (*Id.* at #5 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001))). But that framework only applies to post-removal detention.

The government, by contrast, argues that Alcan does not in fact have a final order of removal. (Doc. 9, #47). Instead, it maintains that ICE is detaining him under

---

[1] These Respondents include Kristi Noem as the Secretary of DHS, DHS itself, Pam Bondi as the Attorney General, and Kevin Raycraft as the ICE Director of the Detroit Field Office.

4

8 U.S.C. § 1225(b)(2) pending the outcome of his removal proceedings. (*Id.*). In other words, he is in *pre-removal* detention. The government further argues that because Alcan is an applicant for admission, he is subject to § 1225(b)(2), which mandates detention, instead of § 1226(a), which permits release on bond. (*Id.* at #51–55). Beyond that, the government also contests the Court's jurisdiction, (*id.* at #56–61), and that Alcan failed to exhaust his administrative remedies because he did not seek a bond hearing in the first instance, (*id.* at #61–65).

Start with the threshold issue of whether Alcan is in pre- or post-removal detention. Alcan does not address the government's contention on this point in his Reply. (Doc. 10 (only addressing jurisdiction and exhaustion)). Nevertheless, under 8 U.S.C. § 1231(a)(1)(A), after "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." That removal period starts, as relevant here, on the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). A removal order becomes administratively final "upon the earlier of: (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

Here, the immigration judge entered an order of removal for Alcan on April 1, 2024. (Doc. 9-3, #97; *see* Doc. 9-4, #99). Alcan, however, appealed that decision to the BIA. (Doc. 9-4, #100). Because that appeal is still pending, the removal order is not

5

yet administratively final. Thus, Alcan is not in post-removal detention, and the 90-day removal period has not started. So Alcan's arguments are inapplicable.

As Alcan is in pre-removal detention, the next question is which statute governs that detention—8 U.S.C. § 1225(b)(2)(A), which mandates detention for "applicants for admission," or § 1226(a), which permits release on bond. (Doc. 9, #51–55). The Court has recently addressed this issue, several times over, and concluded that the former, not the latter applies. *See, e.g.*, *Coronado v. Secretary, Department of Homeland Security*, No. 1:25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025); *Lucero v. Field Office Director of Enforcement and Removal Operations*, No. 1:25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025).[2] Like the petitioners in *Coronado* and *Lucero*, Alcan acknowledges he is present in the country but was never admitted. (Doc. 9-2, #72; Doc. 9-3, #74 (admitting factual allegations in Notice to Appear)). Furthermore, Alcan has applied for asylum, so that further suggests he is "seeking admission." 8 U.S.C. § 1225(b)(2). Thus, for the reasons more fully explained in the Court's previous decisions, the Court finds that Alcan is an "applicant for admission" and falls under the purview of § 1225(b)(2), which in turn means he is subject to

---

[2] The Fifth Circuit recently addressed this issue as well in *Buenrostro-Mendez v. Bondi*, __ F.4th __, 2026 WL 323330 (5th Cir. Feb. 6, 2026). It also concluded that the government properly detained the petitioners under § 1225(b)(2) and thus reversed the district courts' orders to provide bond hearings under § 1226(a). *Id* at *1.

mandatory detention.[3] Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Alcan's Petition (Doc. 1).[4]

In doing so, though, the Court once again takes a moment to observe that, in denying this Petition, the Court it is not commenting on the wisdom of imposing mandatory detention in this setting. The deluge of petitions that have inundated federal courts on this topic in recent months highlight the very real personal costs that mandatory detention imposes not only on the detainee, but also their family members and loved ones. Then there are the accompanying societal costs, both in terms of the direct costs of the detention itself, and the indirect costs arising from sidelining those who might otherwise be productive members of society. At the same time, the Court is also mindful that, once released, it is always possible that a person not lawfully present in the country (especially if facing a substantial likelihood of removal) may decline to appear for future removal proceedings. And if it is difficult to predict who will appear and who will not, or to assess what dangers they may pose in the interim, then perhaps there may be reasons to believe that mandatory detention pending a removal determination is appropriate.

At the end of the day, though, Congress, not this Court, is the body responsible for navigating the various competing concerns and articulating the appropriate path

---

[3] Likewise, the Court more fully addressed its jurisdiction and the issue of exhaustion in *Coronado*, 2025 WL 3628229, at *2–6, 13.

[4] The Court dismisses without prejudice in the event that Petitioner wishes to pursue relief as a potential class member in *Bautista v. Santacruz*, No. 5:25-cv-1873, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025). Should he wish to do so, though, he should pursue any such remedy in that court, not this one.

forward. And, at least in this Court's view, Congress has done so in the plain language of § 1225(b)(2). That said, Congress's chosen path must also comply with the Constitution. And on that front, the Court notes that, if Congress mandates detention pending a removal determination, then the Constitution arguably imposes some obligation on the Executive to ensure that the removal determination occurs in a reasonably prompt fashion. That is, if Alcan's pre-removal detention goes on too long, constitutional concerns may well arise. But given the limited duration of the detention to date, that is a question for a later day. Having said that, in connection with dismissing this action, the Court **ORDERS** the government to provide this Court and Alcan's counsel in writing, within fourteen days of the entry of this judgment, its best current estimate as to when a determination on the question of Alcan's removal will be administratively final.

Separately, Respondent Warden of Butler County Jail filed a Motion to Dismiss (Doc. 6), arguing he is not a proper respondent for this habeas petition. Because the Court dismisses the Petition, the Court **DENIES AS MOOT** Respondent's Motion (Doc. 6). While the Court **DISMISSES WITHOUT PREJUDICE** Alcan's Petition (Doc. 1), the Court withholds an entry of judgment until the government provides the request information.

    **SO ORDERED.**

February 19, 2026
 **DATE**

                                          **DOUGLAS R. COLE**
                                          **UNITED STATES DISTRICT JUDGE**